Commonwealth *v.* Donaducy, Appellant.

Argued September 25, 1950. Before Rhodes, P. J., Hirt, Reno, Dithrich, Ross, Arnold and Gunther, JJ.

*Edward E. Petrillo,* for appellant.

*Damian McLaughlin,* District Attorney, for appellee.

OPINION BY ROSS, J., November 14, 1950:

The defendant was convicted and sentenced in the court below for a violation of section 524 of The Penal Code of 1939, P.L. 872, 18 PS 4524, making one guilty of a misdemeanor who "sells, lends, distributes, . . . offers to sell, lend, distribute . . . any obscene, lewd, lascivious, filthy, indecent or disgusting book, magazine, pamphlet, newspaper . . . or any written or printed matter of an indecent character".

That the defendant published the article which forms the basis of this prosecution is undisputed. He, however, contends that the judgment of the court below should be reversed and his conviction set aside for the following reasons: (1) the writing in question is not in fact obscene; (2) the statute under which the present prosecution was brought is, as applied to this case, violative of the free speech and free press provisions of the Fourteenth Amendment to the Federal Constitution; (3) the court below erred in refusing to admit in evidence various magazine articles and novels offered by him; and (4) the court below erred in refusing to withdraw a juror and continue the case by reason of a remark made by the district attorney in his closing address to the jury. In our opinion, none of these contentions can be sustained.

(1) The case of *Com. v. New,* 142 Pa. Superior Ct. 358, 16 A. 2d 437, which the defendant does not at-

tempt to distinguish, would appear to dispose of his contention that the writing in question is not obscene. In that case, which also was a prosecution under section 524, the evidence was uncontradicted that the defendant sold and distributed the magazine then in question, copies of which were offered in evidence. The jury returned a verdict of guilty and the defendant appealed to this Court, contending that the conviction should not be permitted to stand because the writing was not in fact obscene, filthy or indecent. In disposing of this contention and affirming the judgment of the court below, we said at page 360: "The test for obscenity most frequently laid down seems to be whether the writing would tend to deprave the morals of those into whose hands the publication might fall by suggesting lewd thoughts and exciting sensual desires [citing cases]. . . . The exact point at which language becomes obscene or filthy cannot be determined by any standard test, but it is rather a matter of opinion to be ascertained by the use of ordinary common sense and reason, taking into account the circumstances in which the matter is employed."

In the present case, copies of the article in question were in evidence, the trial judge in his charge gave the jury the test quoted from the *New* case, and by its verdict the jury found as a fact that the article in question was obscene. Under the same circumstances we declined to vacate such a finding in the *New* case and have been given no compelling reason to do so in the present case.

(2) In view of the finding that the article is obscene, there is no merit in defendant's contention that his conviction violates the Federal Constitution. The right of the several states to prevent and punish the publication of obscene writings cannot successfully be disputed. "Allowing the broadest scope to the language and purpose of the Fourteenth Amendment, it is well

understood that the right of free speech is not absolute at all times and under all circumstances. There are certain well-defined and narrowly limited classes of speech, the prevention and punishment of which have never been thought to raise any Constitutional problem. These include the *lewd and obscene,* the profane, the libelous, and the insulting or 'fighting' words. . . . . It has been well observed that such utterances are no essential part of any exposition of ideas, and are of such slight social value as a step to truth that any benefit that may be derived from them is clearly outweighed by the social interest in order and morality." *Chaplinsky v. New Hampshire,* 315 U.S. 568, 571-572, 62 S. Ct. 766, 86 L. Ed. 1031. (Italics supplied.) Even in striking down one section of a New York statute making it a misdemeanor to disseminate any publication devoted principally to criminal news, police reports, or accounts of criminal deeds or pictures, or stories of deeds of bloodshed, lust or crime, the Supreme Court of the United States, in *Winters v. New York,* 333 U.S. 507, 68 S. Ct. 665, 92 L. Ed. 840, inferentially approved another section of the New York act with provisions similar to our own section 524. In that case the Court said at page 510: "Though we can see nothing of any possible value to society in these [crime] magazines, they are as much entitled to the protection of free speech as the best of literature. . . . *They are equally subject to control if they are lewd, indecent, obscene or profane.*" (Italics supplied.)

(3) The defendant's next contention is that the trial court erred in refusing to admit in evidence a number of magazines and books for the jury's use by way of comparison with the writing involved in this case. As stated by the learned court below: "One or more of the jurors might regard one of the proposed exhibits as being obscene, and others might put another exhibit in such a category. How, in such an im-

passe, would the jury reach a verdict in the case before them? Assuming, for the purpose of argument, that one or more of the exhibits was obscene but that no prosecution was had with regard to it, does that excuse the present defendant for also committing the offense? It may or may not be that the proffered exhibits also violate the Act of 1939, but that must be determined by standards applicable to all, and not by comparison one to the other." For the purposes of the trial of the present case the proffered exhibits were irrelevant. The test for obscenity is *not* a comparison with other publications which may or may not be obscene.

(4) The final contention of the defendant merits little discussion. In his closing address to the jury, the district attorney characterized the magazine published by the defendant, in which the article involved in this case was printed, as a "scandal sheet and only for the purpose of appealing to the lowest instincts of men, sex and scandal".

The defendant's motion for the withdrawal of a juror was refused by the trial judge, who in effect instructed the jury to disregard the remark of the district attorney and to arrive at its own conclusion from reading the article and applying the law as outlined by the court. The question of the withdrawal of a juror is one largely in the discretion of the trial judge and an appellate court will only interfere to correct a plain abuse thereof. *Com. v. Massarelli,* 304 Pa. 335, 339, 156 A. 101. In *Com. v. Craven,* 138 Pa. Superior Ct. 436, 11 A. 2d 191, at page 446 we stated: ". . . the trial judge, who has wide powers in the conduct of a trial, is better qualified to pass upon the probable effect on the jury of argument of counsel than we. His action will not be reversed unless it clearly appears that the defendant has been prejudiced by the improper comments." In our opinion, the trial judge in this case

did not abuse his discretion in refusing defendant's motion for the withdrawal of a juror.

The judgment is affirmed; and it is ordered that the record be remitted to the court below and that the defendant appear in the court below at such time as he may be called and that he be by that court committed until he has complied with the sentence or any part of it which had not been performed at the time his appeal was made a supersedeas.